451 So.2d 169 (1984)
John Wayne COLLIER, et ux.
v.
Monty W. FOX, et al.
No. 83 CA 0765.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
Rehearing Denied June 29, 1984.
*170 Jack M. Dampf, Baton Rouge, for plaintiffs-appellants John Wayne Collier and Carmelite B. Collier.
Teddy W. Airhart, Jr., Baton Rouge, for defendants-appellees Monty W. Fox and Jo Ann Brooks Fox.
Before COVINGTON, COLE and SAVOIE, JJ.
COVINGTON, Judge.
This is a suit by plaintiffs, Carmelite B. and John Wayne Collier, to rescind the sale to them of a donut shop business by defendants, Monty W. Fox and Jo Ann Brooks Fox, and for damages for breach of the lease of the building in which the donut shop was located. Also joined as defendants were Donald W. Fox and Katherine W. Fox, lessors of the land used as the donut shop parking lot and on which the donut shop building was located. The Monty Foxes reconvened for the amount due on the promissory note for the credit portion of the sale of the equipment and business, for a utility bill which was incurred by the plaintiffs but paid by the Foxes, and for rent for the building they leased to the plaintiffs. The Monty Foxes brought a separate foreclosure suit and had the equipment in the donut shop sold at sheriff's sale with benefit of appraisement. In connection with the claim for the balance due on the promissory note, the trial court held that they had failed to prove the amount due on the promissory note, but reserved their right to sue in the foreclosure proceeding for any deficiency. The Donald Foxes reconvened for the balance of the rent due under their lease with the plaintiffs. A third party action was also brought against several other parties, but was dismissed prior to trial. The trial court rejected plaintiffs' claim for recission of the sale, and rendered judgment in favor of the Monty Foxes for past due rent on the lease of the building and the utility bill. From this judgment, the Colliers appeal.
The trial court, in oral reasons for judgment, found the following facts: On November 3, 1978, the Monty Foxes sold the *171 Colliers a business known as "Fox's Mary Lee Donut Shop" together with all equipment and supplies in a building situated in East Baton Rouge Parish. Excluded from the sale were, inter alia, a "Mary Lee" sign and a sign in the shape of a donut in front of the premises. In the act of sale the Monty Foxes specifically included the following language: "Vendors further convey the name and good will of Fox's Mary Lee Donut." The consideration for the sale was $53,208.00 of which $13,000.00 was paid in cash, and the balance was represented by a promissory note. On January 1, 1979, the Colliers leased from the vendors the building used for the donut shop for a term of three years, and further leased from the Donald Foxes (parents of Monty Fox) the land on which the building and parking lot were situated.
The plaintiffs operated the business for almost two years. They ceased operations in October of 1980, and defaulted on the note and the leases. Thereafter, the Colliers brought suit against the Monty Foxes to rescind the sale on the grounds that the vendors did not have a proprietary interest in the name "Mary Lee Donut" which they conveyed in the act of sale of the business, and on the further ground that they were misled by the Monty Foxes with regard to the potential profits to be earned from the business.
The evidence, including Collier's testimony, clearly indicates that prior to the sale Monty Fox advised Collier that he did not have a "Mary Lee" franchise, that he merely had the use of the name "Mary Lee" and the signs in front of the donut shop, which were owned by Vic Dunlap, who merchandised the Mary Lee donut mix and other related supplies. Collier was told that the arrangement with Dunlap was to the effect that Monty Fox could retain the use of the name and the two signs as long as Mary Lee products were purchased from Dunlap.
Although the Monty Foxes did not actually have a proprietary interest in the entire name, they had the use of the name. Additionally, neither the Colliers nor the Foxes were ever dispossessed from the use of the name or the signs during the time the donut shop was in operation. Dunlap testified that he had discussions with Collier and that Collier was allowed to continue the use of the name as long as Collier purchased Dunlap's products. Later, Collier entered into a franchise agreement with Dunlap. The trial court, therefore, held that his claim served no basis for recission of the sale or for the breach of the agreement.
Collier's second contention was that Monty Fox misrepresented and deceived him as to the profits which could be realized from the business. The trial court concluded that, while Monty Fox may have painted a rosy picture of the profits to be gained in the donut operation, the evidence revealed no effort was made to deceive Collier. Additionally, Collier worked in the business with Monty Fox for about two months, and had complete access to the books and records prior to the sale. Hence, Collier was familiar with the operation of the donut shop and knew what he was purchasing prior to the sale.
The next contention concerns the two leases. The Colliers seek to show that they are entitled to damages from both the elder and younger Foxes emanating from their respective leases because the lessors failed to properly maintain the facilities leased to the Colliers. The trial court found that there was no merit in this contention, and dismissed the plaintiffs' suit to cancel the leases and for damages. The bases of these contentions were Donald Fox's failure to grade the parking lot and Monty Fox's failure to repair the roof and floor of the building. The evidence showed that Monty Fox made the repairs called for by the Colliers and that the lease contained no requirement that the lessors grade the parking lot. On the contrary, the leases specifically provided that the lessors' only obligation in this respect was to maintain the roof and outside walls of the building. The language of the lease represents the contract between the parties, and they are governed by it. We find no merit in these contentions.
*172 The trial court dismissed plaintiff's suit based on the factual finding that Collier knew prior to the sale that Monty Fox owned neither the name "Mary Lee Donut" nor the sign with the name "Mary Lee" on the front of the building. The evidence clearly establishes that the Colliers knew what they were buying from the Monty Foxes and that they were not disturbed in or evicted from their possession of the thing purchased.
In their brief, plaintiffs assert that the mere claim of title in a third person constitutes a disturbance of possession under LSA-C.C. arts. 2475 and 2476, which read as follows:
Art. 2475. The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells.
Art. 2476. The warranty respecting the seller has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices.
Our courts have interpreted these codal provisions in the light of the knowledge of the buyer. Byrne v. Ortte, 33 So.2d 209 (La.App.Orl.1948). Where the buyer knows that the seller's title is imperfect, he cannot call the seller in warranty in the event of eviction. In the present case, it is clear that the vendors disclosed, and the purchasers understood, that the name "Mary Lee" belonged to another, but that the vendors had the right to use this name under certain conditions. The vendors conveyed this right of use and the Colliers enjoyed the use of the name without disturbance and under the same conditions imposed on the Monty Foxes. Thus, there never occurred a disturbance of possession.
Plaintiff's second assignment of error concerns the reservation to the Monty Foxes, of their right to seek a deficiency judgment against the Colliers for the balance owed on the promissory note representing the credit portion of the sale price. The facts surrounding this aspect of the case are: In answer to plaintiffs' petition, the Monty Foxes reconvened for the unpaid balance of this note and for an order for executory process to seize and sell the property mortgaged to secure payment of the note. The trial judge refused to sign the order for executory process, so the Monty Foxes brought an executory proceeding in a separate suit. The property was sold in due course with benefit of appraisal. The record of that proceeding was introduced in this case. As stated, the trial judge reserved their right to proceed in the other case. The plaintiffs complain that the Monty Foxes are not entitled to another chance to prove their case, since they failed to do so the first time. There is no merit to this complaint. The trial judge dismissed the reconventional demand in the manner of a non-suit, reserving the right to plaintiffs to pursue their claim in a separate suit.
For the foregoing reasons, the judgment appealed is affirmed at appellants' costs.
AFFIRMED.